792 F.2d 734
 T.L.J., an unemancipated female minor seventeen years of
age, Appellant,
v.
William L. WEBSTER, Attorney General, and State of Missouri,
Appellees.
C.L.G., an unemancipated female minor seventeen years of
age, Appellant,
v.
William L. Webster, Attorney General, and State of Missouri,
Appellees.
 Nos. 85-1969, 85-2007.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 14, 1985.
Decided June 4, 1986.
 
 Frank Susman, St. Louis, Mo., for appellant.
 Jerry L. Short, Asst. Atty. Gen., Jefferson City, Mo., for appellees.
 Before ARNOLD, BOWMAN and WOLLMAN, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 In these cases, the plaintiffs challenge the constitutionality of a Missouri statute, Missouri Rev.Stat. Sec. 188.028, which regulates the performance of abortions on women who are under the age of eighteen. Although the United States Supreme Court upheld the statute in Planned Parenthood Association of Kansas City, Missouri, Inc. v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983), the plaintiffs now assert that the failure of the Missouri Supreme Court to promulgate detailed rules of procedure governing expedited appeals from judicial decisions adverse to the woman renders the statute invalid on its face.
 
 
 2
 The plaintiffs argue in the alternative that even if Planned Parenthood conclusively settled the facial constitutionality of this provision, the statute is now being applied in an unconstitutional manner.
 
 
 3
 The District Court[1] dismissed both actions. We now affirm. The Supreme Court in Planned Parenthood approved the language of Missouri Rev.Stat. Sec. 188.028 provided only that the Missouri Supreme Court ensure that adverse judicial determinations be quickly and effectively appealable by the minor. The Missouri Court has now announced a procedural rule which puts into effect the detailed appeal provisions specified in the statute itself. The rule, together with the statute, on its face adequately protects the rights of expectant minor mothers to a prompt and fair determination of their right to make the abortion decision. As to the challenge to the application of the statute, we hold that neither T.L.J. nor C.L.G. has presented this Court a live controversy and therefore affirm the dismissals of their claims on the grounds of mootness and lack of standing, respectively.
 
 I.
 
 4
 In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment forbids the states from interfering with a pregnant woman's choice, with competent medical advice, to terminate her pregnancy. The right to choose abortion is, however, limited. The state may regulate to protect the potential life of a fetus which has become viable, i.e., one which could survive outside the womb. The state may also enact carefully tailored regulations which serve the important state interest of protecting the life and health of the mother.
 
 
 5
 Among the areas left unclear by Roe v. Wade was whether a minor has the same right to make the abortion choice as does an adult. Among the several subsequent decisions focusing on this question were two important cases involving the State of Missouri. In Planned Parenthood of Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), the Court invalidated a Missouri statute which, inter alia, required written consent of a parent or person in loco parentis for all elective abortions performed on women under eighteen years of age and unmarried. The Court held that "the State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy ..." Id. at 74, 96 S.Ct. at 2843. But the Court recognized that not all minors are capable of giving informed and effective consent and thus left the door open for some parental and state involvement in a minor's abortion decision. Id. at 75, 96 S.Ct. at 2844.
 
 
 6
 Missouri revised its abortion statutes to their present form in 1979. The present statute provides four methods by which the minor may give consent to an abortion.[2] (1) An emancipated minor may give consent on her own; (2) an unemancipated minor may have an abortion if she consents and secures the consent of one parent; (3) an unemancipated minor may be granted the right to "self-consent" by court order; or (4) the court may give consent for the minor. This statute was challenged in Planned Parenthood Association of Kansas City, Missouri v. Ashcroft, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983). The Supreme Court held that the statute adequately ensured that a minor faced with the important choice of whether to have an abortion would be the one actually making that decision if she was capable of doing so. In particular, the Court approved the judicial by-pass procedure set out in the statute, construing the law to require a juvenile court first to determine whether the minor was mature enough to make the decision for herself; if it were determined that she was not, then the court would proceed to decide whether nonetheless an abortion would be in her best interest. Id. at 492-93, 103 S.Ct. at 2525-2526. This construction of the Missouri statute meets the standard established earlier in Bellotti v. Baird, 443 U.S. 622, 643-44, 99 S.Ct. 3035, 3048, 61 L.Ed.2d 797 (1979), and reaffirmed in Akron v. Akron Center for Reproductive Health, 462 U.S. 416, 439-40, 103 S.Ct. 2481, 2497, 76 L.Ed.2d 687 (1983). In Planned Parenthood the Court noted that the alternative consent procedure set out in the statute must provide for an effective and expeditious opportunity for appeal and final resolution of any judicial decision adverse to the preference of the minor, but indicated that the appeal procedure outlined in Missouri Rev.Stat. Sec. 188.028 would be sufficient if it were implemented by rule of the Missouri Supreme Court. That appeal procedure is at the heart of the present controversy. The appellants assert that the statutory provision has yet to be effectively implemented by the Supreme Court of Missouri and therefore is invalid; alternatively, they argue that even if the appeal procedure is in force, it is being ignored in practice. We proceed first to a consideration of the facial challenge.
 
 II.
 
 7
 Missouri Rev.Stat. Sec. 188.028 includes a timetable for processing appeals arising from the judicial by-pass procedure. The provision reads as follows:
 
 
 8
 An appeal from an order issued under the provisions of this section may be taken to the court of appeals of this state by the minor or by a parent or guardian of the minor. The notice of intent to appeal shall be given within twenty-four hours from the date of issuance of the order. The record on appeal shall be completed and the appeal shall be perfected within five days from the filing of notice to appeal. Because time may be of the essence regarding the performance of the abortion, the supreme court of this state shall, by court rule, provide for expedited appellate review of cases appealed under this section.
 
 
 9
 Missouri Rev.Stat. Sec. 188.028.2(6). At the time that this statute was first challenged, the state was enjoined from enforcing it. The State Supreme Court had no need to effectuate an expedited appeal procedure for a statute which could not be enforced. By the time Planned Parenthood was argued to the United States Supreme Court on 30 November 1982, a rule (Missouri Rule of Civil Procedure 84.02) had been amended to provide in part that: "Appellate review of cases appealed under section 188.028.2(6), RSMo. shall be expedited." This amendment became effective on 1 January 1983, while Planned Parenthood was under submission but before the decision was filed on 15 June 1983.
 
 
 10
 Apparently, none of the parties in that case informed the Supreme Court of the existing Missouri court rule. Consequently, the Court assumed that there was no Missouri court rule for effecting expedited appeals under the judicial by-pass procedure. Yet the Court approved the statutory appeal procedure with this comment:
 
 
 11
 We believe this section provides the framework for a constitutionally sufficient means of expediting judicial proceedings. Immediately after the effective date of this statutory enactment, the District Court enjoined enforcement. No unemancipated minor has been required to comply with this section. Thus, to this point in time, there has been no need for the State Supreme Court to promulgate rules concerning appellate review. There is no reason to believe that Missouri will not expedite any appeal consistent with the mandate in our prior opinions.
 
 
 12
 Planned Parenthood, 462 U.S. at 491 n. 16, 103 S.Ct. at 2525 n. 16. Thus, the Supreme Court upheld the validity of Sec. 188.028.2(6) even though it thought that the Missouri court had not yet passed a rule to put it into effect.[3] In fact, there was on the books at that time a court rule effectuating the statutory appeal process. That rule remains effective today.
 
 
 13
 The plaintiffs argue that Rule 84.02 is constitutionally deficient since it merely directs that such appeals shall be expedited but does not provide detailed procedural instructions for the appellate courts to follow. The appellants cite cases from the Third and Seventh Circuits.
 
 
 14
 In American College of Obstetricians & Gynecologists v. Thornburgh, 737 F.2d 283 (3d Cir.1984), juris. postponed, --- U.S. ----, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985), the Court stated that "[t]o pass constitutional muster, the alternative judicial procedure must be an established and practical avenue and may not rely solely on generally stated principles of availability, confidentiality, and form." Id. at 297. That Court enjoined operation of a Pennsylvania statute pending issuance of court rules assuring confidentiality and dispatch in its alternative judicial proceedings. But this holding of the Third Circuit must be read in its context. The Pennsylvania statute there under review was seriously defective since it did not specify the procedure to be followed with sufficient detail to guarantee that the proceedings would in fact be carried out expeditiously. The statute itself directed the Pennsylvania Supreme Court promptly to issue rules ensuring confidentiality and expedition of proceedings. Id. at 297 and 306-07. On the other hand, the Third Circuit expressly contrasted the Pennsylvania statute to the Missouri statute which had been approved in Planned Parenthood and which is now under attack again, and noted that the Missouri statute stood on its own. The statute itself sets out the procedure for judicial by-pass of parental consent, instructs the juvenile court on the evidence to be taken, directs court clerks to assist petitioners with filing their petitions, and sets up a timetable for commencing appeals. The Pennsylvania statute was not similarly detailed. Explicit rules of court were necessary to fill the gaps in the statute which had been left there by the legislature deliberately so as to allow the courts to fine-tune the procedure. Id. at 297. Similarly, in Zbaraz v. Hartigan, 763 F.2d 1532 (7th Cir.1985), the Court enjoined enforcement of Illinois's abortion statute until that state's Supreme Court had issued rules ensuring confidential proceedings. The Court noted that the statute was inadequate since it included "merely precatory language requesting the Illinois Supreme Court to provide rules" and "[u]nlike the statute construed in [Planned Parenthood ] ... does not make any specific provisions to assure the minor's anonymity ..." d. at 1543.
 
 
 15
 Both of the cases relied on by the appellant expressly cite Missouri Rev.Stat. Sec. 188.028 as an example of a statute which does not need gap-filling detailed rules or regulations in order to be constitutionally clear and sufficient. We conclude that the Supreme Court in Planned Parenthood approved the language of this statute and thought it was constitutionally sound. That Court mentioned the need for a court rule because such a rule was required by the statute itself in order to effectuate an expedited appeal procedure which was outlined in the statute, and not because of any lack of detail or other infirmity in the statute. We are satisfied that the Supreme Court settled the constitutionality of this section of the statute and that Rule 84.02 is sufficient to put into effect a method of expedited appeals in these cases.
 
 III.
 
 16
 The appellants argue, in the alternative, that even if Missouri Rev.Stat. Sec. 188.028 is held to be constitutional as written, there exists a pattern of grave deficiencies in its application, and that as a result the rights of the appellants and others similarly situated are being infringed. The state asserts that neither of the appellants is in a position to challenge the application of the law since neither of them has a justiciable controversy with the state.
 
 
 17
 Article III, Sec. 2 of the United States Constitution limits the judicial power to "cases or controversies." A "controversy" is a concrete and existing dispute between real parties whose interests are adverse. The federal courts do not have a disembodied legislative power to second-guess enactments of legislatures by giving advisory opinions. There must be, at a minimum, real parties, adverse legal interests, and a live dispute.
 
 A.
 
 18
 The District Court dismissed T.L.J.'s complaint on the ground that the controversy had become moot, that is, that through the passage of time and the occurrence of irrevocable events, there no longer existed a dispute between T.L.J. and the state on which the federal court could grant relief. We agree with the District Court. When T.L.J. first sought the assistance of the Court in November 1984, she could satisfy all elements of a real controversy. At that time, she was under eighteen years of age, unemancipated, and pregnant. She was a person within the reach of Missouri Rev.Stat. Sec. 188.028. When she sought permission from the Missouri courts to have an abortion, that permission was denied.[4] She therefore had a justiciable case when she alleged that Missouri had interfered with her constitutional right to choose abortion. When the District Court enjoined the state from enforcing the statute against T.L.J., the controversy disappeared, we are told, because T.L.J. then legally obtained her abortion. Normally a controversy over abortion is capable of repetition, yet evading review, and therefore escapes the ordinary application of mootness doctrine. See Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 712-713, 35 L.Ed.2d 147 (1973). But the present case is different because there is one more essential element in T.L.J.'s lawsuit which can never be repeated: T.L.J. is now over the age of eighteen and will never again be subject to the restrictions of this statute. Her case is truly moot since there is no possibility at all of her ever again being a pregnant, unemancipated minor.
 
 
 19
 Even when a case becomes moot as to the plaintiff, there may in some instances be a class of plaintiffs as to whom there is still a live controversy. In such instances, the plaintiff remains a representative for the class, and the controversy may proceed to judgment. See Sosna v. Iowa, 419 U.S. 393, 401-02, 95 S.Ct. 553, 558-559, 42 L.Ed.2d 532 (1975). However, the present case is not a class action. It is true that T.L.J. initially filed individually and as a representative of a class, but she thereafter made no effort to have a class certified or otherwise comply with Fed.R.Civ.P. 23 governing class actions. She argues that the District Court should have certified a class on its own. We need not pursue the dubious merits of this argument, because, even if a class had been certified, the only issue it could have tendered for decision is the validity of the statute on its face. We have already ruled on that issue. A class action is not suitable for testing the validity of a statute as applied to various individuals. The merits of that issue necessarily depend on the facts of individual cases and should be litigated in individual actions. We affirm the District Court's order of 29 May 1985 dismissing T.L.J.'s case as moot.[5]B.
 
 
 20
 Appellant C.L.G. filed her action on 10 June 1985, shortly after the dismissal of T.L.J.'s complaint. She was at that time pregnant, seventeen years old, and unemancipated. She stated that she desired an abortion and that she did not want her parents involved in her decision. She did not seek to follow the procedure in Missouri Rev.Stat. 188.028. Instead, she went directly to the federal court seeking injunctive and declaratory relief against the state. Her argument that the statute was unconstitutional, both on its face and as applied, was substantially the same as the arguments proposed by T.L.J. in the earlier case. Subsequent to filing the action, but before the court ruled, C.L.G. had an abortion, apparently without permission of a Missouri court or of the District Court. In its order of 8 August 1985, the Court ruled that, unlike the T.L.J. case, this one was not mooted by the termination of the petitioner's pregnancy. She was at that time seventeen years old; she could still become pregnant again before her eighteenth birthday and again find herself subject to the Missouri statute. Her complaint was therefore capable of repetition yet likely to evade review. However, the Court ruled against C.L.G. on her facial challenge to the statute. We affirm for the reasons already set out. As to her challenge to the application of the statute to her, the District Court correctly ruled that since she had never attempted to use the provisions of the statute, she had no standing to complain of its application or misapplication to her.
 
 IV.
 
 21
 For the reasons set out in this opinion, the orders of the District Court are affirmed.
 
 
 
 [1]
 The Hon. Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri
 
 
 [2]
 Missouri Rev.Stat. Sec. 188.028. The statute is set out in pertinent part in Planned Parenthood Association of Kansas City, Missouri v. Ashcroft, 462 U.S. 476, 479 n. 4, 103 S.Ct. 2517, 2519 n. 4, 76 L.Ed.2d 733 (1983)
 
 
 [3]
 The quoted portion of the Supreme Court's opinion expressed the views of only two justices. It was part of the opinion for a divided Court written by Powell, J., and joined (as to the validity of Sec. 188.028) only by Burger, C.J. However, three justices (O'Connor, J., joined by White and Rehnquist, JJ.), concurred in upholding the constitutionality of that section on the much broader ground that the state has a compelling interest in protecting and preserving fetal life at all stages of pregnancy. 462 U.S. at 505, 103 S.Ct. at 2532 (O'Connor, J., concurring in part). The concurring justices questioned the degree to which a minor has a right to choice in abortion matters, but in any event were willing to validate the limited restrictions imposed by the Missouri statute. Justice O'Connor commented:
 Assuming, arguendo, that the state cannot impose a parental veto on the decision of a minor to undergo an abortion, I agree that the parental-consent provision contained in Sec. 188.028 is constitutional. However, I believe that the provision is valid because it imposes no undue burden on any right that a minor may have to undergo an abortion. I concur in the judgment of the Court on this issue.
 Id. Thus five of the justices approved the Missouri statute, three of them without reservation. Justice Powell and Chief Justice Burger approved it only on the condition that the State Supreme Court promulgate a rule allowing for expedited appeals.
 
 
 [4]
 We have examined the record of T.L.J.'s appearance before the St. Charles County Juvenile Court on 24 October 1983. The record makes clear that on that day the Juvenile Court was not disposed to apply the statute according to its terms and according to the law of the land which had been announced by the United States Supreme Court. The following excerpt from the transcript is illustrative of the tone of the hearing:
 THE COURT: ... This is probably the most important case that I've ever sat on since I've been a Circuit Judge because depending upon what ruling I make I hold in my hands the power to kill an unborn child. In our society it's a lot easier to kill an unborn child than the most vicious murderer....
 The Court is making the finding that the juvenile for purposes of determining whether or not she can have an abortion is not emancipated and is still under the jurisdiction of the Juvenile Court. That leaves us to make the other determination under Section 188.028 and that determination is whether or not the Court finds that the abortion is in the best interest of the minor. The issue then is this, the Court firmly believes that the killing of an unborn fetus is murder. The issue then is can this murder go justified....
 Juvenile Court transcript at 33-34. Although the primary function of the hearing under Missouri law was to determine whether T.L.J. was capable of making an adult choice (a choice which three months later, by virtue of majority, would be hers of indisputed right), the Court avoided that threshold question and went on to make her decision for her. The following exchange between T.L.J.'s attorney and the Court closed the hearing:
 MR. ZOLLNER: ... [T]he petition asked you to determine whether this minor has sufficient intellectual capacity and is intelligent enough to consent to this abortion under a different part of this Statute and I don't think that you have hit that finding.
 THE COURT: I will hit that finding at this time then. I don't believe that this particular juvenile has sufficient intellectual capacity to make a determination that she is willing to kill her own child. It's that simple.
 Juvenile Court Transcript at 35.
 This Court can sympathize with the ethical conflict which judges must experience when their legal duty is to act contrary to deeply held personal beliefs. The question of elective abortion arouses passionate opinions. The sharpness of the debate has left no room for neutral moral ground in many minds. But the law on this subject cannot be disputed in the lower courts, including the Juvenile Courts of Missouri and this Court. The Supreme Court has announced that it is a woman's right to control the issue of her body up until the time that issue can live separately. This decision is the law of the land. Regardless of personal discomfort with the law, it is the duty of judges to apply it. If they cannot do so with a clear conscience, then they should remove themselves from this class of cases.
 
 
 [5]
 After it became apparent that the case was in danger of becoming moot, T.L.J. sought to add another named plaintiff, M.W., in order to preserve the class action. Since it was not alleged that M.W. had sought to use the judicial consent alternatives in Missouri Rev.Stat. 188.028, M.W. lacked standing to question the validity of the statute as applied